IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. H-06-204 |
| | § | CIVIL ACTION NO. H-09-3457 |
| CHARLES CRAWLEY, | § | |
| | § | |
| Defendant-Movant | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28

U.S.C. § 2255 is Movant Charles Crawley's § 2255 Motion to Vacate, Set Aside or Correct

Sentence (Document No. 101),[1] and Memorandum in Support (Document No. 103), the United

States' Answer and Motion to Dismiss (Document Nos. 104), Movant's Motion to Stay and to

take Judicial Notice (Document No. 110), the United States' Answer and Response to Movant's

Memorandum in Support (Document No. 111), Movant's Renewed Request to Stay Proceedings

and Contemporaneous Motion for Leave to file Traverse in Reply with Preliminary Reply to

Response in Opposition (Document No. 114), Movant's Reply to the Government's Response

(Document No. 115), Movant's Pro Se Objection to the Government's Request for Leave to

Respond to Traverse and Amended Claim (Document No. 117), the Government's Response to

Movant's Reply to the Government's Response (Document No. 125), and Movant's Renewed

---

[1] Charles Crawley's Motion to Vacate, Set Aside or Correct Sentence can be found at
Document No. 1 in Civil Action H-09-3457 and at Document No. 101 in Criminal Action No. H-
06-204.  References hereafter will be to the Criminal Document numbers unless otherwise
indicated.

1

Reply (Document No. 126). After reviewing all of the pleadings, the record of the proceedings

before the District Court in the underlying criminal case, and the applicable case law, the

Magistrate Judge RECOMMENDS, for the reasons set forth below, that the Government's

Motions to Dismiss (Document Nos.104, 111) be GRANTED, that Movant's Motion to Vacate,

Set Aside, or Correct Sentence (Document No.101) be DENIED, and that this § 2255 proceeding

be DISMISSED with prejudice.

## I.      Procedural History

Movant Charles Crawley ("Crawley"), who is currently in the custody of the United States

Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C.§ 2255. This is

Crawley's first attempt at § 2255 relief.

On June 8, 2006, Crawley was charged by Indictment with aiding and abetting mail fraud,

in violation of 18 U.S.C. §§ 1341, 1346 and 2 (count one), aiding and abetting embezzlement of

property in violation of 29 U.S.C. § 501(c) and 18 U.S.C. § 2 (count two), aiding and abetting

embezzlement of union funds in violation of 29 US.C. § 501(c) and 18 U.S.C. § 2 (count three);

and aiding and abetting false entry in records required by the LMRDA in violation of 29 U.S.C. §

439(c) and 18 U.S.C. § 2 (count four). Following a five day jury trial, Crawley was found guilty

on all counts. (Document No. 46). Prior to sentencing, a Pre-Sentence Report ("PSR") was

prepared (Document Nos. 76, 78), to which both the United States and Crawley filed written

objections. (Document Nos 63, 71, 75).[2] Pursuant to the PSR, Crawley's advisory guideline

---

[2] With the exception of the loss amount, the United States and Crawley resolved the
outstanding issues in the PSR. (Transcript of Sentencing Hearing, Document No. 88, p. 5).
With respect to the loss amount, Movant took the position that the actual loss and the intended
loss were the same, zero. With respect to the amount of loss, Movant argued that instead of a 16
point enhancement based on a total loss of $1,091,244.22, that he should be given a 4 point

sentence was calculated as follows: (1) Crawley had a base offense level of 6.  (2) Because

Crawley was held accountable for an intended loss amount of $1,091,244.10, under U.S.S.G.

§ 2B1.1(a)(1)(I), his base offense level was increased by sixteen levels.  In particular, as to the

summary of loss and Crawley's role in the offense, the PSR provides:

> 44.  Crawley is being held accountable for a total intended loss of $1,091,244.10.
> Crawley committed election fraud in 1999 and as a result was voted as President
> of the Union.  That election allowed Crawley to serve as President from January
> 2000 through December 31, 2002.  Crawley received a salary of $100,000 per year
> for 2000, 2001, and 2002.  Therefore, the fraud generated an actual loss to the
> Local Union 988 of $300,000.  Then, Crawley was re-elected under fraudulent
> pretenses on October 8, 2002.  Crawley's new term started January 2003.  He
> remained in office, as President, until October 2003.  During that period, Crawley
> received a salary of $85,000.  Therefore, the total actual loss caused by the offense
> was $385,000.

> 45.  Crawley's intent was to receive the salary through 2005, the unpaid salary of
> $215,000 can be considered as intended loss.  That amount included the remainder
> of the salary for 2003, that Crawley was going to get paid, which was $15,000,
> and it included his intended salary of $100,000 for 2004, and $100,000 for 2005.
> With respect to his salary, the total loss was $600,000.

---

enhancement based on the $20,000 telephone bid.  The Court overruled the objections.  Judge
Harmon stated:

> I think it's very different to be somebody who'd got a contract with the
> government, and somebody who is elected and by the union rank and file.  I just
> think that's a different situation.  He did not give them honest service.  He couldn't
> give them honest service because he got it dishonestly.  I don't know how you
> could possibly apportion what part of it he really earned and what part he didn't
> earn.  And I think the point about the fact that he was — not only did he get in
> there fraudulently, but he also was, you know, getting money fraudulently while he
> was in there.  So, I mean, seems to me like the whole point of his being there was
> for the money, not for the fact that he was president of the — or the president of
> the union.  So I'm not buying your argument, Mr. Kuniansky.  It's a brilliant
> argument, but I'm not buying it.  So I'm going to overrule your objection to the
> intended loss, and I'm going to adopt the presentence report as my own, both the
> findings of fact and the application of the guidelines to the facts, and find that the
> intended loss was $1,091,244.22. (Transcript of Sentencing Hearing, Document
> No.  88, pp.  16).

3

46.  In addition, Crawley was paid a total pension of $313,260.19, from January 2000 to October 2003, based on the fraudulent elections.  Had Crawley remained as President in 2004 and 2005, he would have received an additional estimated pension of $157,984 (that amount was based on the fact that on January 1, 2001, the defendant's pension was $86,217; on January 1, 2002, the defendant's pension was $225,976; and on January 1, 2003, the defendant's pension was $291,170). The estimate was based on an average increase in the defendant's pension of $78,992.

47.  In summary the total loss for guideline calculation purposed, with respect to the defendant's salary and pension, was $1,071,224.10.  Additionally, Crawley embezzled $20,000 from Local Union 988 by inflating the telephone contract. Therefore, the total loss is $1,091,244.10.

48.  Crawley was considered the leader and organizer of the scheme that involved less than five participants.  As the PSR reflected, Charlie King stated Crawley planned how to commit the election fraud and he directed others on how to carry out the fraud by instructing them to take the ballots to Beaumont, Texas, and other places.

49.  Crawley abused his position of trust.  Crawley was President of Local Union 988.  As President of the union, Crawley was the principal officer, business manager, and the head business agent.  Additionally, as reflected in the PSR, Crawley had control over the Executive Board and had the ability to influence the board regarding who should be awarded contracts, such as the contract for the new telephone line.

(3) Pursuant to U.S.S.G. § 3B1.1(c), Crawley's offense level was increased by two levels based on his role in the offense.  (4) Crawley's offense level was increased by two levels pursuant to U.S.S.G. § 3B1.3 because he abused a position of trust.  (5) With an adjusted base offense level of 26, and with a criminal history category of I, he had an advisory guideline range of 63 to 78 months.  Crawley was sentenced on May 25, 2007, (Document No.  82, Transcript of Sentencing Hearing, Document No.  88, pp.  24-26) to a term of imprisonment of 60 months as to counts 1 and 2, 12 months as to count 4, with the sentences to run concurrent, and 18 months as to count 3, to be served consecutive, for a total term of imprisonment of 78 months, to be followed by a 3

4

year term of supervised release on counts 1, 2, and 3, and a 1 year term as to count 4, with all the

terms of supervised release to be served concurrently.  Crawley was ordered to pay a special

assessment of $325 and restitution in the amount of $121,478.86.  Judgment was entered on June

11, 2007.  (Document No. 89).  With respect to his sentence, Judge Harmon stated:

> Charles Crawley is before the Court for sentencing after having been found guilty
> of mail fraud, aiding and abetting, two counts of embezzlement, aiding and
> abetting and making false entries in records required by the LMRDA, aiding and
> abetting.  Mr.  Crawley used fraudulent ballots in an attempt to ensure his victory
> in the 2002 officer election, and among other things.  He has maintained his
> innocence throughout the course of the investigation and prosecution of the case.
> We went to trial before a jury, and Mr.  Crawley testified in his defense.
>
> I believe that over 300 individuals were denied their rights to have their votes
> counted because Mr.  Crawley voted on their — for himself on their behalf.  And
> his conduct involved a significant amount of planning and preparation.  His
> conduct did not involve violence, but it was a very, very serious crime that flies in
> the face of what a president of a union should be about.  I believe that the sentence
> I am about to hand down adequately meets the sentencing objectives of 18 United
> States Code Section 3553A, which instructs the Court to impose a sentence
> sufficient, but not greater than necessary, when considering the nature and
> circumstances of the offense, and the history and characteristics of the defendant.
> (Transcript of Sentencing, Document No.  88, pp.  23-24).

Crawley appealed his conviction and sentence.  Crawley raised several issues on appeal.

One issue, that the jury instructions regarding honest services fraud created a risk of his being

convicted for violating civil regulations and internal union policies, as opposed to the mail fraud

statute, was resolved at oral argument when Crawley conceded the claim failed under the invited

error doctrine.  As to the other two appeal issues, whether it was reversible error to admit

evidence of his 1999 voter fraud and whether the court impermissibly utilized his salary and

pension as a measure for calculating "dollar loss" under the guidelines and for the restitution

order, the Fifth Circuit affirmed his conviction and sentence.  The Fifth Circuit set forth the facts

relevant to his appeal as follows:

> Local 988, the Houston, Texas, subordinate local labor union of the International Brotherhood of Teamsters, is a "labor organization", within the meaning of the Labor Management Reporting and Disclosure Act (LMRDA), 28 U.S.C. § 402(i),(j).  The LMRDA requires such organizations to hold officer elections every three years.  Crawley was elected president of Local 988 in 1997 and was reelected in 1999 and 2002.

> After irregularities were detected for the 2002 election, an investigation was initiated; it was determined that Crawley had falsified voter ballots.  Further investigation revealed he had received a $20,000 kickback during his presidency in connection with a Union contract.  Crawley was charged with: (1) one count of mail fraud, in violation of 18 U.S.C. §§ 1341, 1346, and 2: (2) one count of embezzlement of an official ballot for the 2002 election, in violation of 29 U.S.C. § 501(c); (3) one count of embezzlement from a labor organization for the kickback, also in violation of 29 U.S.C. § 501(c); and (4) one count of making a false entry in records required by the LMRDA, in violation of 29 U.S.C. § 439(c).

> At trial, the Government proved Crawley's involvement in voter fraud for the 2002 election through the testimony of, among others, Gary Kyle, a truck driver and member of Local 988, who was a friend and supporter of Crawley's.  In September 2002, Crawley invited Kyle to his home after work hours.  There, the two men engaged in an "assembly-line" process: using several different pens, Crawley marked and folded each ballot; he then handed it to Kyle, who placed and sealed the ballot in the return envelope.  Crawley used the Union's membership roster to decide which members were unlikely to vote in the election, such as part-time UPS employees.  Kyle testified that peel-and-stick labels generated by the Union's computer were used on the envelopes to avoid their being challenged.  Thereafter, the completed ballots were separated by the zip codes for the "voters" and mailed from various post offices.

> Crawley's plan went awry, however, when 39 sets of duplicate ballots were received. None of the voters had requested duplicate ballots.  This irregularity caused the investigation which ultimately implicated Crawley and Kyle.

> A Government witness, Charles King, testified, over Crawley's objection, that, for the 1999 election, which Crawley "won", Crawley: committed similar acts of voter fraud; and devised the strategy of duplicating ballots for those members least likely to vote.  After this testimony, the district court gave a limiting instruction to the jury, consistent with Federal Rule of Evidence 404(b): the evidence of the 1999 voter fraud could be considered only for determining Crawley's "motive, intent, identity, knowledge, opportunity, plan, preparation, and the absence of mistake or

accident in engaging in" the 2002 voter fraud.

Concerning the kickback, it was proved at trial that-in an incident completely separate from the voter fraud-Crawley requested, and received, an artificially high bid for the purchase and installation of a new telephone system for Local 988's new union hall. David Fagan testified: Crawley promised to award the contract to Fagan, the husband of Crawley's secretary, if Fagan "could bump up the bid 20 grand so that [Crawley] could, you know, get the money". When Fagan explained to Crawley that he would not be the low bidder if he increased the bid, Crawley responded: "I run this hall". He also stated: "I take care of your wife. I pay your insurance. I take care of you all". The latter comment was understood by Fagan to mean his wife would lose her job if he did not agree to the kickback. Fagan increased his bid to $52,364, and Crawley awarded him the contract two days later.

A jury convicted Crawley on all four counts. He was sentenced, *inter alia*, to 78 months' imprisonment and ordered to pay $121,478.86 in restitution. *United States v. Crawley,* 533 F.3d 349, 352-53 (5th Cir. 2008).

The Fifth Circuit Court of Appeals, unpersuaded by all of Crawley's arguments, affirmed his conviction and sentence on June 27, 2008. *United States v. Crawley*, 533 F.3d 349 (5th Cir. 2008) (Document Nos. 98, 99). In particular, the Fifth Circuit concluded that the Court had not erred in admitting the evidence of Crawley's 1999 voter fraud. As to the remaining issue relating to the loss calculations, the Fifth Circuit wrote:

In adopting the PSR, the district court found *intended*, rather than *actual*, loss to be in excess of $1,000,000, thereby qualifying for the 16-level increase. The PSR, as well as the briefs here, sometimes refer to the amounts of pension and salary received by Crawley as actual loss and those not-yet-received amounts as intended loss. These characterizations erroneously imply the district court added both the actual and intended losses to determine the loss amount. As stated, under § 2B1.1, the district court may use only the *greater of actual or intended loss*. In any event, this incorrect terminology is of no moment because both the money actually received and that which had not yet been received by Crawley could qualify as intended loss-"pecuniary harm that was intended to result from" Crawley's voter fraud. Moreover, PSR 57 stated: "The defendant is held accountable for an *intended loss* amount of $1.091,244.1[9]" (emphasis added).

Therefore, at issue is whether it was *clearly erroneous* for the district court to use

7

Crawley's entire salary and pension in seeking to make a "reasonable estimate" of intended loss for the voter fraud. In disputing the intended-loss calculation, Crawley contends the intended loss was *zero* because he intended only to deprive Local 988 of the right to elect their officials in an election free of voter fraud, not to deprive them of the salary and pension he would receive. This contention, however, is inconsistent with the offenses with which Crawley was charged. The jury was instructed it was required to find, beyond a reasonable doubt, that Crawley acted with the specific intent to defraud. As to that specific intent, the indictment was read to the jury; it stated Crawley "intended to obtain Local 988 proprty consisting of a designated salary for the president of Local 988 and associated benefits for the period of January 2003, until January, 2006". The indictment stated also that Crawley "intended to deprive Local 988 and its members of their intangible right to [Crawley's] honest services".

Although we cannot know which of these theories (if not both) was the basis for Crawley's conviction, each provides a sufficient basis for the district court's determining the intended loss constituted Crawley's salary and pension for a several-year period (the period used is not contested). Again, "intended loss" is defined as "the pecuniary harm that was intended to result from the offense". U.S.S.G. § 2B1.1 cmt. n.3(A)(ii). "Pecuniary harm" is "harm that is monetary or that otherwise is readily measurable in money". *Id.* at n.3(A)(iii).

Obviously, if the jury found Crawly acted with the intent to deprive Local 988 of salary and benefits, the definition of intended loss would be satisfied. Moreover, even if the jury found only that Crawley intended to deprive Local 988 of honest services, such a finding would still provide a basis for the court's intended-loss finding. By intentionally depriving Local 988 of honest services, Crawley obviously inflicted some level of pecuniary harm on the organization. Along this line, Crawley never maintained at sentencing that he was convicted only of honest-services fraud, rather than pecuniary fraud. It was not *clearly erroneous*, therefore, for the district court to estimate such loss by looking to Crawley's salary and pension. *See United States v. Woodward*, 459 F.3d 1078, 1087 (11th Cir. 2006) (holding, under 2B1.1, that "the correct loss amount should be based on ... the deprivation of [defendant's] honest services. Each dollar [defendant's business] took from the City resulted from depriving the City of [defendant's] honest services").

*                               *

Although not cited in either party's brief, our court has held in *United States v. Sublett*, 124 F.3d 693 (5th Cir. 1997): where the defendant perpetrates the fraud to procure a *contract* but intends to provide the contracted-for services, the district court must deduct the value of the legitimate services actually provided. *Id.* at

695.  Obviously, the commission of fraud to procure a union presidency is
fundamentally different in many respects, including method of apportionment of
legitimate services from the commission of fraud to procure a services contract.

In the former situation, the LMRDA imposes an obligation on all union officers to
"serve their union members honestly and in good faith".  28 U.S.C. § 501(a).  By
procuring a union office by fraud, that precept has been violated, which renders
any service valueless *ab initio*.  Moreover, as noted by the district court, legitimate
services, if any, were not capable of being severed from non-legitimate services,
unlike in *Burns* and *Sublett*.  Accordingly, the district court's findings that intended
loss equals Crawley's salary and pension was *not* clearly erroneous.  Restated, that
finding is plausible in light of the entire record.  *Crawley*, 533 F.3d at 356-358)
(emphasis in original).

The mandate issued on July 21, 2008.  Crawley sought review by the United States Supreme

Court.  His petition for certiorari was denied on November 3, 2008.  *Crawley v.  United States*,

129 S.Ct.  522 (2008); (Document No.  100).  The one-year limitation period began to run on

November 3, 2008, the day his conviction became final, and expired on November 3, 2009.

Crawley filed his § 2255 motion on October 21, 2009.  (Document No.  101).  In his

§ 2255 motion, Crawley alleged four claims of ineffective assistance of counsel.  As to the

supporting facts of each allegation, the § 2255 motion states: " See Memorandum of Law with

Appended Exhibits in Support." (Document No.  101).  The docket sheet reveals that the §

2255 motion was not accompanied by a Memorandum of Law with Appended Exhibits in

Support.  In fact, the Memorandum of Law was filed a few weeks later, on November 12,

2009.  (Document No.  103).  In his November 12, 2009, filing, Crawley raised the

following grounds for review:

First Point of Error: Counsel was ineffective for failure to challenge this
Court' s subject matter jurisdiction as it related to Movant' s Second Point of
Error.  Movant was prejudiced thereby.

9

Second Point of Error: Counsel was ineffective for failures in raising Double Jeopardy claim as to Count II of the indictment.  Movant was prejudiced thereby.

Third Point of Error: Counsel was ineffective for failures in challenging variance in the indictment with evidence introduced at trial forming the basis for erroneous convictions.  Movant was prejudiced thereby.

Fourth Point of Error: Counsel was ineffective for failures in challenging erroneous and unfounded enhancements at sentencing and on appeal.  Movant was prejudiced thereby.

Fifth Point of Error: Counsel was ineffective for refusing to pursue a plea agreement once instructed to do so by Movant.  Movant was prejudiced thereby. (Document No.  103, pp.  5-6).

In addition, on February 11, 2010, Crawley filed a Motion to Stay Proceedings and Judicial Notice (Document No. 110), and on March 3, 2010, a Renewed Request to Stay Proceedings and Contemporaneous Motion for Leave to file Traverse in Reply with Preliminary Reply in Response in Opposition (Document No.  114), in both of which he requested that his instant      § 2255 motion be stayed pending resolution by the United States Supreme Court of cases involving the honest services fraud services statute, including *Black v.  United States,* 130 S.Ct.  2963 (2010): *Skilling v.  United States,* 130 S.Ct.  2896 (2010); and *Weyhrauch v.  United States,* 130 S.Ct. 2971 (2010).  According to Crawley, "each case represents issues perhaps best described as one of the most important criminal matters decided by the Supreme Court in many years and may have direct and controlling impact on Crawley's claims" (Document No.  110, p.  3) and "because there is no legitimate way to know in advance exactly how the Supreme Court may or may not rule on the "theft of honest services" issue, nor guess as to its application to Crawley's case, the stay is appropriate." (Document No.  114, p.  3).  In addition, Crawley in his February 8, 2010, filing, "reserved the right to amend his pleadings based on *Black*." (Document No.  110, p.  3).

Following issuance of the Supreme Court's decisions in *Black* and *Skilling* on June 24, 2010,
Crawley filed a Pro Se Traverse in Reply to Government's Response in Opposition to Motion to
Vacate Pursuant to 28 U.S.C. § 2255 with Annexed and Amended Claim on July 1, 2010
(Document No. 115). In his Traverse, Crawley moved to amend his       § 2255 motion to allege
a new claim based on *Skilling* and *Black*. According to Crawley, his conviction as to counts 1, 2,
and 3 cannot stand given that the honest services fraud statute has been limited to apply to bribes
and kickbacks, which were not alleged in the Indictment. In addition, Crawley filed objections to
the Government's Request for Leave to Respond to Traverse and Amended Claim (Document
No. 117), and a Renewed Reply. (Document No. 126). The Government has filed several
pleadings in response to Crawley's filings. In the Government's First Answer and Motion to
Dismiss (Document No. 104), the United States moved to dismiss Crawley's § 2255 motion on
the ground that all of Crawley's ineffectiveness of counsel claims were vague and conclusory. In
its follow up Answer and Motion to Dismiss that was filed in response to Crawley's filing of his
Memorandum in Support, the Government re-urged its motion to dismiss. According to the
Government, Crawley's untimely November 12, 2009, Memorandum failed to relate back to
anything alleged in his initial filing, and because it does not qualify as a Rule 15 amendment to his
October 21, 2009, filing, it was beyond the November 3, 2009, AEDPA deadline and therefore
untimely. The Government argued that Crawley "filed a timely, yet wholly conclusory motion on
October 21, apparently to toll his filing deadline." (Document No. 104, p. 10). The
Government further argued that even assuming that Crawley's amended claims were timely, the
claims are procedurally barred, and without merit. The Government attached to its Response
affidavits from Crawley's trial counsel and sentencing and appeals counsel, in which both counsel

11

respond to Crawley's allegations of ineffective assistance of counsel.  With respect to the affidavit

of Crawley's trial counsel, the affidavit of Edward Barnett states in part:

> Mr.  Crawley has stated that he instructed me to "inquire and negotiate a plea
> agreement."  This is simply not true.  Mr.  Crawley instructed me he would not
> plead guilty to any charges and wanted to go to trial immediately after retaining
> me.  The Assistant United States Attorney, Michael Wright, did initiate the plea
> bargaining process.  I did inform Mr.  Crawley and he again made it very clear to
> me he wanted to go to trial and would not enter into plea negotiations with the
> United States.
>
> Mr.  Crawley complains that the fact that he was banned from the International
> Brotherhood of Teamsters (IBT) through an Independent Review Board.  (IRB).
> The defense stipulated to the fact that he was banned from the IBT for life, but
> only with the stipulation that it had nothing to do with the 2002 election fraud
> allegation.  This was the defense's trial strategy.  There was never any evidence
> that anything alleged in the indictment was the reasons Mr.  Crawley was banned
> from the IBT.  The testimony did state that the alleged fraud in the bidding process
> to obtain and install a telephone system in the Teamsters union hall was referred to
> the IRB.  The defense believed this was the weakest part of the Government[']s
> case.  The Government had planned on calling a material witness later in their case,
> Shannon Feagan.  The defense felt she would testify favorable for the defense on
> this issue.  The government ultimately did not call Mr.  Feagan.  The defense
> considered calling Ms.  Feagan as a witness in our case in chief and decided not to
> as part of our trial strategy.

The affidavit of Crawley's sentencing and appeals counsel, Richard Kuniansky, states in part:

> 5.  At sentencing and on appeal, I vigorously objected to the dollar amount which
> was the primary enhancement driving the Defendant's sentence.  Unfortunately,
> notwithstanding my best efforts, I was unsuccessful in this objection at both the
> trial court level and on appeal.
>
> 6.  I did not object at the trial level or on appeal to a 2 level enhancement for role
> in the offense and a 2 level enhancement for abuse of position of trust.  My reasons
> for not objecting were twofold:
>
> > (i) First, and most importantly, I did not then, nor do I now, view either
> > objection as having any merit.  The evidence was overwhelming that the Defendant
> > supervised others in the criminal activity alleged.  The evidence was also
> > overwhelming that the Defendant used his position of trust as a labor official to
> > facilitate the crime.

(ii) I made a strategic decision, which if I had to do all over again would remain the same, that to raise these frivolous objections would detract from what I believed to be a potentially meritorious objection regarding dollar loss.

The Government has also responded to Crawley's Motion to Amend and reasserted it earlier arguments that Crawley's honest services fraud claims are not timely under § 2255(f) and that, even assuming he could overcome the procedural bar, the Supreme Court would have to make its ruling retroactive in order to impact Crawley's conviction. This § 2255 proceeding is ripe for ruling.

## II. Discussion

The United States argues that Crawley's § 2255 Motion to Vacate, Set Aside or Correct Sentence should be dismissed because the allegations of ineffectiveness of counsel are conclusory and fail to state a claim upon which relief may be granted. The United States further argues that Crawley's November 12, 2009, Memorandum in Support should be dismissed as time-barred. According to the Government, Crawley cannot rely on his Memorandum in Support of § 2255 as a supplement to his timely filed October 21, 2009, filing because it does not qualify as a Rule 15 amendment. The Government argues that Crawley has not and cannot show that the claims he sets out in his November 12, 2009, filing relate back to his October 21, 2009, filing given the complete absence of any facts or allegations in support of the ineffective assistance of counsel claims in the original motion. As such, the Government argues that Crawley's belated attempt to assert his ineffective assistance of counsel claims in his November 12, 2009, filing is untimely

under AEDPA.[3]   Further, the Government argues that any allegations that Crawley would bring

based on the Supreme Court's recent decisions concerning the honest services fraud statute,

would likewise be untimely under AEDPA, and the Supreme Court has not held that the decisions

are to be applied retroactively to cases on collateral review.[4]   The Government argues, in response

---

[3]        On April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996
("AEDPA") was enacted.  With the enactment of AEDPA, 28 U.S.C. § 2255(f) now specifically
provides for a one-year statute of limitations:

> A 1-year period of limitation shall apply to a motion under this section.  The
> limitation period shall run from the latest of–
>
> (1)     the date on which the judgment of conviction becomes final;
>
> (2)     the date on which the impediment to making a motion created by
>         governmental action in violation of the Constitution or laws of the
>         United States is removed, if the movant was prevented from filing
>         by such governmental action;
>
> (3)     the date on which the right asserted was initially recognized by the
>         Supreme Court, if that right has been newly recognized by the
>         Supreme Court and made retroactively applicable to cases on
>         collateral review; or
>
> (4)     the date on which the facts supporting the claim or claims presented
>         could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.


[4] At the time Crawley filed his initial § 2255, *Skilling, Black,* and *Weyhrauch* were
pending before the Supreme Court, and in each case, the petitioners challenged the
constitutionality of § 1346 In *Skilling*, the Court declined to adopt Skilling's argument that §
1346 was unconstitutional.  Rather, the Court, examining the development of the honest services
doctrine, concluded that the statute was constitutional to the extent it covers "bribery and
kickback schemes."  120 S.Ct at 2907.  ("In proscribing fraudulent deprivations of 'the intangible
right of honest services,' § 1346, Congress intended at least to reach schemes to defraud
involving bribes and kickbacks.  Construing the honest-services statute to extend beyond that core
meaning, we conclude, would encounter a vagueness shoal.  We therefore hold that § 1346 covers
only bribery and kickback schemes.  Because Skilling's alleged misconduct entailed no bribe or

14

to Crawley's Traverse in Response and Amended Claim, that Crawley failed to assert a due

process challenge to the vagueness of 18 U.S.C. § 1346 at trial or on appeal and failed to argue

that § 1346  that it should be limited to bribes or kickbacks, and therefore his claims are

procedurally defaulted.[5]   Moreover, the Government further argues that even assuming that

Crawley could successfully overcome his procedural default, he has not demonstrated that his

conviction *in toto* should be vacated.

Crawley counters that under Rule 15,[6] he could amend his § 2255 motion, especially

_____

kickback, it does not fall within § 1346's proscription.").   The Supreme Court remanded the
matter to the Fifth Circuit for further proceedings consistent with its opinion and instructed:

> Because the indictment alleged three objects of the conspiracy-honest-services
> wire fraud, money-or property wire fraud, and securities fraud- Skilling's
> conviction is flawed.  See *Yates v.  United States*, 354 U.S. 298, 77 S.Ct.  1064, 1
> L.Ed.  2d 1356 (1957) (constitutional error occurs when a jury is instructed on
> alternative theories of guilt and returns a general verdict that may rest on a legally
> invalid theory).  This determination, however, does not necessarily require reversal
> of the conspiracy conviction; we recently confirmed, in *Hedgpeth v.  Pulido*, 555
> U.S. ___, 129 S.Ct.  530, 172 L.Ed.  2d 388 (2008) (*per curiam*), that errors of
> the *Yates* variety are subject to harmless-error analysis.

[5] Here, the jury was instructed that the fraudulent scheme alleged in Count one had two
objectives: "[f]irst to deprive Local 988 of property consisting of the authorized salary
for President of Local 988 and associated benefits for the period January 2003 until January 2006;
and second, to deprive Local 988 and its membership of its intangible right to Crawley's honest
services pursuant provisions of a federal statute called Labor Management Reporting and
Disclosure Act, the Teamsters Constitution, and the by-laws of Local 988."  (Document No.  48).
The Fifth Circuit in affirming Crawley's conviction noted: "[a]long this line, Crawley never
maintained at sentencing he was convicted only of honest-services fraud, rather than pecuniary
fraud."  *Crawley*, 533 F.3d at 357.  In addition, with respect to these two theories, the Court
observed: "[a]lthough we cannot know which of these theories (if not both) was the basis for
Crawley's conviction."  *Id.*

[6] Federal Rule 15(a)(1) provides:
(1) *Amending as a Matter of Course.*   A party may amend its pleading once as a
matter of course within:
(A) 21 days after serving it, or

when, as here, the Court had Ordered the Government to Answer, which Crawley maintains

shows the Court screened his initial filing, and found it warranted an answer by the Government.

He further argues that because the Government had not yet filed its answer, he could amend his §

2255 motion without court permission.   According to Crawley, because Rule 15 provides that

leave to amend should be granted, in a situation such as here, where no answer had been filed, his

claims are not subject to the time-bar rules.

In the context of a § 2255 motion, Crawley's Rule 15 relation back argument fails.  The

docket sheet reveals that Crawley timely filed his § 2255 motion.  In his motion, Crawley raised

four grounds of ineffective assistance of counsel and indicated that the facts in support of said

claims were contained in a Memorandum of Law.  Even though Crawley referenced a

Memorandum, it was not filed with his § 2255 motion.  The docket sheet shows that it was not

filed until November 12, 2009, some four days after the expiration of his filing deadline. Crawley

claims that because the Government was Ordered to respond to his § 2255 motion, it follows that

the Court reviewed his § 2255 motion, and found it had merit.

Contrary to Crawley's argument, the Order that required the Government to respond did

not address, implicitly or explicitly, the merits of his § 2255 motion.  As to the Government's

arguments that Crawley's October 21, 2009, § 2255 motion should be dismissed because all of

the grounds of ineffective assistance of counsel are vague and conclusional, the law is clear that

bare, conclusory allegations of ineffective assistance of counsel are insufficient to warrant habeas

relief. *United States v. Hunter,* (No.  Civ.  09-0692-W

---

(b) if the pleading is one to which a responsive pleading is required, 21 days after
service of a responsive pleading or 21 days after service of a motion under Rule
12(b), (e), of (f), whichever is earlier.

16

S5, CR 08-0053-WS-M), 2010 WL 1994876*2 (May 18, 2010); *Smith v. Florida*, (No. 8:07CV1146T-30EAJ), 2009 WL 2150897*2 (M.D. Fla. July 13, 2009) ("Ground one is subject to dismissal without consideration because Petitioner's ineffective assistance claims are wholly conclusory and unsupported by any specific facts."); *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) ("conclusory allegations of ineffective assistance are insufficient.") (citation omitted); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue). Upon this record, Crawley's § 2255 motion raises wholly conclusional ineffectiveness claims and as a result, fails to state a claim upon which relief may be granted and therefore, should be dismissed.

As to Crawley's arguments that his allegations are not time-barred because the claims in his November 12, 2009, filing and in his Motion to Amend to assert claims based on *Skilling* relate back to his original § 2255 motion, Crawley's reliance on Rule 15 of the Federal Rules of Civil Procedure, to avoid the timeliness requirement under AEDPA, fail.[7] In *Mayle v. Felix*, 545 U.S. 644, 662 (2005), the Supreme Court, with respect to the application of the relation back doctrine, cautioned against an expansive application of the doctrine:

if claims asserted after the one-year period could be revived simply because they

---

[7] Crawley must still bring his honest services claims within the deadlines prescribed by Congress in § 2255(f). Contrary to Crawley's arguments, the issuance of a decision by the Supreme Court does not *per se* entitle him to relief. Even though the Supreme Court found the honest service fraud unconstitutional to the extent it involved schemes to defraud other than bribes or kickbacks, the Supreme Court did not announce that its ruling was retroactive to cases on collateral review, and as a result,§ 2255(f)(3) does not apply. Moreover, Subsection (2) does not apply because the government did not create an impediment and Crawley has not alleged one. Likewise, subsection (4) does not apply because legal decisions are not new "facts" for purposes of § 2255(f). See, *E.J.R.E. v. United States*, 453 F.3d 1094, 1098 (8th Cir. 2006). As discussed supra, Crawley's conviction became final on November 3, 2008, when the Supreme Court denied his petition for certiorari review.

relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance.

Similarly, the Fifth Circuit has held that "[n]ew claims of ineffective assistance of counsel do not automatically relate back to prior ineffective assistance claims simply because they violate the same constitutional provision"...if the new ground for relief involves facts that "differ in both time and type from those in the original pleading, then the new claims will be time-barred." *United States v. Gonzales*, 592 F.3d 675, 680 (5th Cir. 2009), *pet. cert. filed*, (No. 10-5035 March 29, 2010). Crawley's original filing set forth no facts in support of his claims, and as such, there is nothing to compare in order to ascertain whether the amended claims provide factual clarification or amplification to existing claims. Had the amended claims done so, the November 12, 2009, filing could have arguably related back to the initial timely filing.

Likewise, there has been no showing by Crawley that because the new claims "state claims that are tied to a common core of operative facts, relation back [is] in order." *Mayle v. Felix*, 545 U.S. at 664. The original ineffectiveness claims brought by Crawley were completely devoid of facts, much less operative facts. In conclusion, Crawley cannot circumvent AEDPA by filing a § 2255 motion and thereafter follow up after the AEDPA filing deadline with the substance of the motion. Court's have characterized such preliminary § 2255 motions as "place holders." "A 'placeholder' motion is a skeletal document filed to satisfy the period of limitations, with the intent of filing a real or completed petition at a later date." *United States v. Jackson*, CR. No. 0:98-1126-JFA, 2006 WL 5083826 (D.S.C. Dec.8, 2006). A "place-holder" § 2255 motion cannot serve to extend the limitations period for claims that have not been sufficiently asserted.

In addition, the filing of a "place holder" § 2255 motion does not warrant the application of equitable tolling.  Rare and exceptional circumstances may warrant the application of equitable tolling principles to a late filed § 2255 motion to vacate, set aside or correct sentence.  *United States v. Riggs,* 314 F.3d 796, 799 (5th Cir. 2002), *cert.* denied, 539 U.S. 952 (2003) (quoting *Davis v. Johnson*, 158 F.3d 806, 811 (1998), *cert.  denied*, 526 U.S. 1074 (1999)); United *States v. Patterson,* 211 F.3d 927 (5th Cir. 2000).  Equitable tolling, however, is not available if the petitioner does not act diligently in attempting to meet the one year limitations deadline.  *Coleman v. Johnson,* 184 F.3d 398, 403 (5th Cir. 1999), *cert. denied,* 529 U.S. 1057 (2000).  In addition, the Fifth Circuit has approved of equitable tolling in very limited circumstances, "'principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights.'"  *Fierro v. Cockrell,* 294 F.3d 674, 682 (5th Cir. 2002), *cert.  denied*, 538 U.S. 947 (2003);  (quoting *Coleman,* 184 F.3d at 402); *See also Davis v. Johnson,* 158 F.3d 806, 811 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999) (Inconsistent ruling by the district court constituted exceptional circumstances which warranted the application of equitable tolling principles); *United States v. Patterson,* 211 F.3d 927 (5th Cir. 2000) (Rare and exceptional circumstances existed to warrant equitable tolling where the Movant was under mistaken impression as to filing deadline, where that mistaken impression was furthered by the District Court); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (remanding case for rehearing on equitable tolling where the petitioner alleged "he was deceived by his attorney into believing that a timely § 2255 motion had been filed on his behalf").  The Fifth Circuit has disapproved of the application of equitable tolling for ignorance of the law, pro se status alone, lack of legal training  or for circumstances which are "garden variety claims of

excusable neglect." *Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir.), *cert. denied*, 528 U.S. 1007 (1999); *Felder v. Johnson*, 204 F.3d 168, 171-73 (5th Cir.), *cert denied*, 531 U.S. 1035 (2000); *Lockingbill v. Cockrell,* 293 F.3d 256, 265 (5th Cir. 2002), *cert. denied*, 537 U.S. 1116 (2003). Likewise, the Fifth Circuit has held that because a prisoner has no right to counsel during a post conviction proceeding, mere attorney error or neglect does not trigger the application of equitable tolling. *Riggs,* 314 F.3d at 299. The movant bears the burden of establishing equitable tolling, *United States v. Petty*, 530 F.3d 361 (5th Cir. 2008), by showing "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way of timely filing his § 2255 motion." *Lawrence v. Florida*, 597 U.S. 327 (2007). Crawley has provided no basis for equitable tolling of the statutory period of limitations. Given the absence of any facts in the record that would constitute a rare or exceptional circumstance, equitable tolling of the limitations period is not available. Because Crawley has not made a showing of extraordinary circumstances or diligence on his part to file a complete § 2255 motion on or before November 3, 2009, equitable tolling does not apply.

Crawley has filed a Motion for Bail Pending Resolution of his § 2255 motion (Document No. 120), and Memorandum in Support (Document No. 121), and a Motion to Compel Expedited Government Response to Bail Motion (Document No. 122). The Government has responded. (Document No. 123). Crawley filed a reply to the Government's Response (Document No. 124). On October 27, 2010, Crawley filed a Renewed Motion to Expedite Ruling on Bond Motion. (Document No. 127). The law is clear that there is no constitutional right to bail after conviction and sentencing. *United States v. Olis*, 450 F.3d 583, 585 (5th Cir. 2006), (citing *United States v. Williams*, 822 F.2d 512, 517 (5th Cir. 1987)). Under the 1984

20

Bail Reform Act, 18 U.S.C. § 3141 *et.  seq*, that there is a strong presumption against bail

pending appeal.  *Id.*  In the context of a postconviction proceeding, courts have required the

movant to show a substantial constitutional claim on "which he has a high probability of success,

and exceptional circumstances making a grant of bail necessary for the habeas remedy to be

effective."  *United States v.  Eliely*, 276 Fed.  Appx.  270, 270-71 (4th Cir.  2008).  Because

Crawley has not shown there is a substantial constitutional claim on which he is entitled to relief,

he has not shown that bail is warranted based on the facts of his case.  Accordingly, his request

should be denied given that Crawley is not entitled to relief on his § 2255 motion.

**III.  Conclusion and Recommendation**

Based on the foregoing, and the conclusion that Crawley's § 2255 motion fails to state a

claim upon which can be granted and should be dismissed and the conclusion that Crawley's

November 12, 2009, Memorandum of Law asserts claims that are time-barred and that equitable

tolling is not available, it is

RECOMMENDED that the Government's Motion to Dismiss (Document No.  104, 111)

be GRANTED, that Movant Crawley's § 2255 Motion to Vacate, Set Aside or Correct Sentence

(Document No.  101) be DENIED, and that this § 2255 proceeding be DISMISSED with

prejudice.  It is FURTHER

ORDERED that Movant's Motion for Bail (Document No.  120) and Motion for

Expedited Response (Document No.  122) are DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented

parties of record.  Within 14 days after being served with a copy, any party may file written

objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5,

S.D. Texas.  Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the ten day period bars an aggrieved party from attacking conclusions of law on appeal.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996).

Signed at Houston, Texas, this 29th day of October, 2010.

Frances H. Stacy
United States Magistrate Judge